**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF KENTUCKY**
**FRANKFORT DIVISION**

IN RE:

CRYSTAL R. RUST                                                                      CASE NO. 13-30543

DEBTOR

FRANCIS C. BROWN                                                                     PLAINTIFF

V.                                                                                   ADV. NO. 14-3001

CRYSTAL R. RUST                                                                      DEFENDANT

**MEMORANDUM OPINION**

The issue before the Court is whether the Defendant owes the Plaintiff a debt that is nondischargeable pursuant to § 523(a)(8). The Plaintiff Francis Brown ("Brown") cosigned a student loan at the request of the Defendant Debtor Crystal Rust ("Rust"). Rust defaulted on the loan and Brown ultimately satisfied the debt with the original lender. Brown filed suit against Rust in state court and obtained a default judgment. Brown now seeks a determination that this debt is nondischargeable under § 523(a)(8).

Brown moved for summary judgment [Doc. 11] and, after the parties briefed the issue, a hearing was held on April 17, 2014. At the hearing, the parties agreed that no further factual development is necessary so the Court took the Motion for Summary Judgment and the allegations in the Complaint under submission [Doc. 19]. Upon consideration of the parties' briefs, testimony and exhibits, and a review of the record, it is determined that Rust owes Brown a debt of $25,337.33, plus interest, that is nondischargeable pursuant to § 523(a)(8)(A)(ii).

**I.    FACTS**

The facts are undisputed, except as otherwise indicated. Brown testified by affidavit that in late August or early September 2002, Brown was approached by Rust and her fiancé (now husband) to assist Rust in obtaining a student loan. Brown considered Rust and her fiancé friends and agreed to assist. Brown understood Rust needed someone to cosign or she could not obtain the student loan.

Brown testified that both Rust and her fiancé represented that the loan was used for Rust's education and that his name would come off the loan within 2 years. This is the only arguably contested fact, as Rust's counsel contended in briefing and during oral argument that Brown knew Rust would use the loan proceeds for living expenses and not educational expenses. Brown disputes this contention, testifying that he was never told Rust would not use the student loan for educational purposes. Despite Rust's arguments, there is no proof in the record by affidavit or otherwise supporting her argument and Brown's testimony is therefore undisputed.

Rust, while attending the University of Southern Indiana, signed a Non-negotiable Credit Agreement dated September 5, 2002 ("Credit Agreement"), for an "Education One Undergraduate Loan" payable to Bank One, N.A. ("Bank One") for $30,000.00 ("Bank One Loan"). The next day, Brown signed the Credit Agreement as "Cosigner." In describing the terms of repayment, the Credit Agreement does not generally distinguish between the "Borrower" and "Cosigner" and instead refers to them generally as "I," "me," "my" and "mine."

Brown testified that he received none of the proceeds of the Bank One Loan and considered Rust the "principal obligor and borrower." *See* Brown Affidavit [Doc. 11, Exhibit A at ¶ 5]. Over the next few years, Brown "started receiving communications from various debt collectors regarding Ms. Rust's student loan account" informing him that "Rust had failed to make timely payments on her student loan." *Id.* at ¶ 6. Brown testified that debt collectors

contacted him to demand money and threatened to damage his credit. *Id*. As a result, Brown made two payments totaling $837.33 on Rust's student loan account in July 2009. *Id.* at ¶ 7. Brown eventually paid off the loan by payments of $9,000.00 on August 20, 2012, and $15,500.00 on September 7, 2012. Brown paid a total of $25,337.33 to the Bank One to satisfy the Credit Agreement. *Id.* at ¶ 8-9.

In February 2013, Brown filed suit against Rust in Franklin Circuit Court and on April 10, 2013, received a default judgment in his favor for $25,337.33, plus interest from the date of entry of the judgment. He garnished approximately $1,400.00 in Rust's wages before Rust filed chapter 7 bankruptcy on October 8, 2013.

Rust listed Brown's claim of $25,500.00 on Schedule F. Brown subsequently filed this adversary proceeding on January 1, 2014, seeking a determination that a debt of $25,337.33, plus interest ("Claim"), is nondischargeable pursuant to § 523(a)(8). On March 31, 2014, Brown moved for summary judgment arguing that there are no genuine issues of material fact and the debt is nondischargeable as a debt for "an obligation to repay funds received as an educational benefit, scholarship or stipend … ." 11 U.S.C. § 523(a)(8)(A)(ii). Rust filed a response in opposition and the matter was fully briefed.

The Court conducted a hearing on the Motion for Summary Judgment on April 17, 2014. The parties represented at the hearing that no further facts needed development and all evidence necessary to make a determination on the Motion for Summary Judgment and the allegations in the Complaint are in the record. Thus, the Court struck the pending pretrial deadlines and trial and took the matter under submission on the record. The matter is now ripe for determination.

**II.     DISCUSSION.**

Brown moved for summary judgment pursuant to § 523(a)(8)(A)(ii). This decision also considers discharge pursuant to § 523(a)(8)(A)(i) because the parties submitted the matter on the record, and the allegations in the Complaint seek a judgment pursuant to § 523(a)(8) generally. Ultimately, the decision is made based on subsection (A)(ii) and summary judgment is warranted.

**A.  Section 523(a)(8) Makes Loans for an Educational Benefit Nondischargeable.**

Section 523(a) contains a limited list of obligations that are not discharged under the various sections of the Bankruptcy Code. Statutory exceptions to discharge set forth in § 523 are considered in light of the underlying policy of the Bankruptcy Code, *i.e.* the goal of providing a fresh start, and "are generally construed 'narrowly against the creditor and in favor of the debtor.'" *Boston Univ. v. Mehta (In re Mehta)*, 310 F.3d 308, 311 (3d Cir. 2002) (*quoting In re Pelkowski*, 990 F.2d 737, 744 (3d Cir.1993)). "However, in the case of section 523(a)(8), Congress has revealed an intent to limit the dischargeability of educational loan debt, and we can construe the provision no more narrowly than the language and legislative history allow." *Pelkowski*, 990 F.2d at 745.

Pursuant to § 523(a)(8), unless excepting a debt from discharge imposes an "undue hardship" on the debtor and the debtor's dependents, the student loan is not dischargeable if the debt is for:[1]

> (A)(i)  an educational benefit overpayment or loan made, insured, or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution; or
>
> (ii)    an obligation to repay funds received as an educational benefit, scholarship or stipend … .

---

[1] Subsection (8)(B) is not applicable to this case.

4

Section 523(a)(8) balances two competing policy objectives: (1) the insolvent debtor's right to a fresh start; and (2) the need to protect the financial integrity of educational loan programs and to induce lenders to lend to borrowers who could not qualify for loans under traditional underwriting standards. *Gorosh v. Posner (In re Posner)*, 434 B.R. 800, 803 (E.D. Mich. 2010). Thus, the policy considerations underlying § 523(a)(8) "necessarily limit the parties who may take advantage of the statute's protections." *Id.*

Therefore, even recognizing the expansion of § 523(a)(8) to nongovernmental and profit-making organizations through subsection (A)(ii), courts cannot lose sight of the Congressional policy behind the exception itself and must make decisions interpreting the scope of these provisions with these policies in mind. *Mehta*, 310 F.3d at 311 (*quoting New Rock Asset Partners, L.P. v Preferred Entity Advancements, Inc.*, 101 F.3d 1492 (3d Cir. 1996) for the proposition that "plain meaning is therefore conclusive, 'except in the rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters.' ").

### B. **Brown Has the Burden to Prove the Claim Is Nondischargeable.**

Brown, as the creditor seeking a judgment of nondischargeability on his Claim, bears the burden of proof by a preponderance of the evidence that a debt exists and the debt is the type excepted from discharge under § 523(a)(8). *See Maas v. Northstar Education Finance, Inc. (In re Maas)*, 497 B.R. 863, 869 (Bankr. W.D. Mich. 2013). If the creditor meets that burden, then the debt is only discharged if the debtor establishes that repayment of the debt would constitute undue hardship. *Id.* Rust has not raised a defense of undue hardship, so the only issues before the Court are: (1) does Rust owe Brown a debt; and (2) is that debt nondischargeable under either § 523(a)(8)(A)(i) or § 523(a)(8)(A)(ii)?

C. **The Claim Is a Legitimate Obligation that Rust Owes Brown.**

Brown has proven by a preponderance of the evidence that Rust owes Brown a debt. Brown is a judgment creditor pursuant to a default judgment in state court, *i.e.,* the Claim. It is therefore not surprising that Rust's counsel conceded the existence of an obligation at oral argument. Rust's contention, however, is that the nature of the Claim takes it outside the limits of an educational benefit covered by § 523(a)(8).

D. **The Claim Was Made for an Educational Benefit and Is Nondischargeable.**

    1. **The Bank One Loan Was Made for an Educational Benefit.**

Subsections 523(a)(8)(A)(i) and (A)(ii) do not refer to the general term "student loans." Instead, both indicate they apply to loans for an "educational benefit," a term that is not defined in the Bankruptcy Code. This case turns on whether the Claim is for a covered educational benefit, rather than a dispute over undue hardship. "Although the breadth of this term has been the subject of some debate, a majority of courts determine whether a loan qualifies as an 'educational benefit' by focusing on *the stated purpose for the loan when it was obtained,* rather than on how the loan proceeds were actually used." *See Maas*, 497 B.R. at 869 (citations omitted) (emphasis in original).

It is easy to conclude the Bank One Loan was for an educational purpose. The Credit Agreement at Section L.2 specifically provides: "The proceeds of this loan will be used only for my educational expenses at the School." The term "School" is defined in the Credit Agreement to mean the University of Indiana and that term is used numerous times in the document. Specifically, Section L.12 of the Credit Agreement, highlighted in bold, recognizes the intent of the parties to treat the financing as an educational benefit under § 523(a)(8):

> I acknowledge that the requested loan may be subject to the limitations on dischargeability in bankruptcy contained in section 523(a)(8) of the United

6

>   States Bankruptcy Code.  Specifically, I understand that you have
>   purchased a guaranty of this loan, and that this loan is guaranteed by the
>   Education Resources Institute, Inc. ("TERI"), a non-profit loan guaranty
>   agency.

Brown also testified that Rust represented the loan proceeds were for her education. During oral argument, Rust's counsel argued that Brown knew Rust would use the proceeds of the Bank One Loan for living expenses, although Rust provided no proof in the record by affidavit or otherwise to back up this claim.  Even if Brown knew Rust would use the Bank One Loan proceeds for living expenses, educational loans are not limited solely to tuition.  *See Murphy v. Pennsylvania Higher Education Assistance Agency and Educational Credit Management Corp. (In re Murphy)*, 282 F.3d 868, 871 (5th Cir. 2002) (living or social expenses are not excluded from treatment as an educational loan).

The evidence unequivocally shows that the Bank One Loan was an "educational benefit." The issue in this case is whether the Claim is also an educational benefit.  Bank One would have the benefit of § 523(a)(8)(i) if it was pursuing a nondischargeability action.  Brown is not Bank One, however, so it is necessary to characterize the debt and the rights of Brown to decide whether the Claim is an educational benefit under either subsection of § 523(a)(8).  This requires a detailed review of the document that created the obligation, the Credit Agreement.

   2. **Brown Was an Accommodation Party Under the Credit Agreement.**
      a. **A Cosigner may have different connotations depending on the applicable instrument.**

The characterization of Brown's status under the Credit Agreement will control whether his Claim should receive treatment as an educational benefit under § 523(a)(8). Brown executed the Credit Agreement as "Cosigner", although that term is not defined.  A review of Ohio law, which controls under the Agreement, suggests Brown is a coborrower (also called a comaker), a guarantor (or surety) or an accommodation party under the Credit Agreement.  The distinction

7

between a guarantor and an accommodation party is not important as they share the same rights that affect this decision.

 Coborrower. If Brown is a coborrower or comaker, then he is in the same position as the plaintiff in *Posner*, relied on by the Defendant. *Posner*, 434 B.R. 800 (Bankr. E.D. Mich. 2010). *Posner*, on similar facts, determined that a cosigner on a student loan to the debtor was a coborrower, not a lender that could take advantage of § 523(a)(8). *Id.* at 802-03.

 The coborrower in *Posner* had a direct obligation to the original lender, so when she paid off the student loan the creditor was paying her own debt. *Id.*; *see also Fibreboard Corp. v. Celotex Corp. (In re Celotex Corp.)*, 472 F.3d 1318, 1321 (11th Cir. 2006) (co-debtor could not claim subrogation under § 509 if it was primarily liable for the entire debt). The type of action a coborrower has against the borrower is a claim for contribution that is not based on the original debt. The original student loan debt was paid and gone, and the plaintiff could only sue the debtor for contribution.

 Guarantor or Accommodation Party. An accommodation party accepts liability by signing an instrument issued for value and for the benefit of another party, but the accommodation party is not a direct beneficiary of the instrument proceeds. OHIO REV. CODE ANN. § 1303.59(A) (West 2014). The guarantor signs for the same purpose, but an accommodation party is not necessarily a guarantor. *See* OHIO REV. CODE ANN. § 1303.59(B).

 An accommodation party may be a borrower, or a "maker," as well as an endorser. *Id.* An accommodation party is obliged to pay in whatever capacity he signs. *Id.* Regardless of that capacity, an accommodation party has the right to enforce the instrument. OHIO REV. CODE ANN. § 1303.59(E) ("An accommodation party who pays the instrument is entitled to reimbursement from the accommodated party and is entitled to enforce the instrument against the

8

accommodated party."). *See also Fed. Land Bank of Louisville v. Taggart*, 508 N.E.2d 152, 156 (Ohio 1987) (recognizing that an accommodation party has recourse to all the applicable defenses codified in the Uniform Commercial Code, including suretyship).

A guarantor and an accommodation party have different rights, but the focus here is on the shared right of subrogation. "Subrogation" means: "The substitution of one party for another whose debt the party pays, entitling the paying party to rights, remedies, or securities that would otherwise belong to the debtor." BLACK'S LAW DICTIONARY 1563-64 (9th ed. 2009). "Subrogation simply means substitution of one person for another; that is, one person is allowed to stand in the shadows of another and assert that person's rights against the defendant." *Id. (citing* DAN B. DOBBS, LAW OF REMEDIES, § 4.3, at 404 (2d ed. 1993)).

A party that can step into the shoes of the original lender has better and different rights than a party that only has a right of contribution. If Brown is merely a coborrower, then Brown cannot subrogate under Ohio law by stepping into the shoes of the lender to pursue the borrower with all the rights of the lender. *United States v. Am. Scrap Tire Recycles, Inc.*, Case No. 1:07-CV-0156, 2008 WL 1696927, at *8 (N.D. Ohio April 9, 2008) ("Subrogation is allowed only in favor of one who has been obliged to pay the debt of another, and not in favor of one who pays a debt in the performance of his own primary obligation."). A guarantor or accommodation party may step into the shoes of the lender and pursue any remedies of the lender.[2] *Id.*

Whether someone is a guarantor or an accommodation party is a question of fact. *Huron County Banking Co., N.A., v. Knallay*, 489 N.E.2d 1049, 1054 (Ohio Ct. App. 1984). Ohio law

---

[2] It could be argued that as an accommodation party, Brown would also have a right of subrogation under § 509 of the Code. *See, e.g., Benson v. Corbin (In re Corbin), 506 B.R. 287 (Bankr. W.D. Wash. March 5, 2014)*. But subrogation rights under § 509 were not pled. Further, in order for a co-obligor to exercise subrogation rights under § 509, the co-obligor must pay the claim of a "creditor" (i.e. an entity that has a right of payment from the debtor as of the petition date). Because Brown paid the claim pre-petition, § 509 is not applicable to this discussion. *Prim Capital Corp. v. May (In re May)*, Case No. 05-10521, Adv. No. 05-1098, 2006 WL 4458360 (Bankr. N.D. Ohio, Aug. 14, 2006), *aff'd*, 368 B.R. 85 (B.A.P. 6th Cir. 2007) (Table).

provides that one is presumptively an accommodation party if the contract contains "words indicating that the signer is acting as a surety or guarantor with respect to the obligation of another party to the instrument." OHIO REV. CODE ANN. § 1303.59(C). Factors to consider in determining status are: (1) the location of the signature on the note; (2) the language of the note itself; (3) whether the comaker received any of the loan proceeds; and (4) the intent of the parties. *Knallay*, 489 N.E.2d at 1054.

### b. **Brown is at least an accommodation party on the Credit Agreement.**

The Credit Agreement confirms Brown should have the status of an accommodation party. The Credit Agreement contains provisions that suggest Brown is jointly and severally liable on the Agreement, like a coborrower. The obligations of the Borrower are written in the first person using "I," "me," "my," or "mine" and the definition in the Credit Agreement indicates these terms include the Cosigner.

There are, however, numerous sections in the Credit Agreement that refer to these terms (*i.e.,* "I," "me," "my," or "mine") where the context only allows an interpretation that refers to the Borrower. For example, Section J.1 provides: "I will send written notice to the servicer … after any change in my … enrollment status at the School." The Credit Agreement only contemplates that the Borrower would attend the School, so use of "I" and "my" can only refer to the Borrower in this section. Similar examples are found in the following Sections of the Credit Agreement: C.3, G, L.2, L.8, L.9. L.10, L.13 and L.14.

The Credit Agreement also contains terms that suggest Brown is only liable if Rust fails to pay, which is typical of an accommodation party. For example, the Agreement contains the special provision in Section O that states "IF THE BORROWER DOES NOT PAY, THE LENDER HAS A LEGAL RIGHT TO COLLECT FROM YOU." This section only applies to

10

obligors cosigning in Vermont, but it creates ambiguity in the Credit Agreement where there is no clear definition of the Cosigner.

Further, Section E.2 of the Credit Agreement provides for delivery of monthly statements or a coupon book, which should have only gone to the primary obligor to avoid the risk of duplicate payments. The record is consistent. Brown testified without rebuttal that he was asked to sign the loan because Rust was unable to obtain the loan without his signature and he did not receive any of the loan proceeds. The parties also treated repayment of the loan as the primary obligation of Rust and debt collectors only looked to Brown <u>after</u> Rust failed to pay.

This is indicative of at least an accommodation party. As an accommodation party, Brown has a right of subrogation and thus steps into the shoes of the original lender and can enforce the Credit Agreement and any related security. Therefore, the original debt, which was for an educational benefit, is still enforceable by Brown. This review does not end the analysis. The educational benefit must still be one covered by § 523(a)(8)(A)(i) or (A)(ii).

    c. **<u>A Subrogee Might Not Have a Right to Seek Nondischargeability under § 523(a)(8)(A)(i)</u>.**

Subsections (A)(i) and (A)(ii) of § 523(A)(8) both apply to educational benefits, but they apply to different obligations. Subsection (A)(i) applies only to overpayments or loans "made, insured, or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution." Subsection (A)(ii) was added by Congress in 2005 to cover loans made by nongovernmental and profit-making organizations, thereby making a broader range of student loan debt nondischargeable. Unlike subsection (A)(i), there is no requirement under subsection (A)(ii) that the obligation be in any way related to a government unit. *See Benson v. Corbin (In re Corbin)*, 506 B.R. 287 (Bankr. W.D. Wash. March 5, 2014).

The Plaintiff only sought summary judgment § 523(a)(8)(A)(ii) because he relies on *Corbin*, which shares similar facts. The bankruptcy court in *Corbin* ultimately found that the claim of an accommodation party for the debtor was a nondischargeable educational benefit under § 523(a)(8)(A)(ii). *Id.* at 296-98. But the bankruptcy court would not find the debt nondischargable pursuant to § 523(a)(8)(A)(i).

The bankruptcy court determined, in part based on controlling law in the Ninth Circuit, that including debts owed to a guarantor or an accommodation party in subsection (A)(i) does not promote the collection of student loans. *Id.* at 295. Also, the state law rights of a guarantor or accommodation party conflict with the federal policy favoring discharge of debt. *Id.*

It is not clear the same result would hold in the Sixth Circuit. *Compare Pazdzierz v. First Am. Title Ins. Co. (In re Pazdzierz)*, 718 F.3d 582 (6th Cir. 2013) (allowing a subrogee to make a nondischargeability claim under § 523(a)(2) because there was not specific language barring assignees), with *Gabel v. Olson* (*In re Olson*), 355 B.R. 649 (Bankr. E.D. Tenn. 2006) (a subrogee could not make a nondischargeability claim under § 523(a)(15) because § 523(a)(15) specifically lists the creditors covered - a spouse, former spouse, or child of the debtor).

These cases might support extension of the rights of Brown as a subrogee under § 523(a)(8)(A)(i) because there is no language in § 523(a)(8) that specifically addresses subrogation or the creditors covered. The bankruptcy court in *Posner* seemed to suggest, however, that the limitation might come from the policy considerations for § 523(a)(8). *Posner*, 434 B.R. at 803. It is not necessary to reach a final conclusion because Brown has a nondischargeable claim under § 523(a)(8)(A)(ii).

### d. The Claim Is Nondischargeable Under § 523(a)(8)(A)(ii).

As indicated, the bankruptcy court in *Corbin* determined the subrogation claim of the accommodation party was nondischargeable pursuant to § 523(a)(8)(A)(ii). Courts have interpreted § 523(a)(8)(A)(ii) broadly since its addition in 2005. The court in *Corbin* recognized that "courts have interpreted the phrase 'obligation to repay funds received as an education benefit' so broadly that it seems … that Section 523(a)(8)(A)(i) is almost subsumed by subsection (ii)." *Corbin*, 506 B.R. at 296.

The focus under § 523(a)(8)(ii) is not on the lender, but "whether, in the plain language of the subsection, the obligation is 'to repay funds received as an educational benefit' as reflected by the debtor's agreement and intent to use the funds at the time the obligation arose." *Id*. Therefore, the primary, and the cases suggest only, focus is the purpose of the loan. *See Maas*, 497 B.R. at 869-870.

The cases reviewed that construe the applicability of § 523(a)(8)(A)(ii) interpret this section broadly to apply to certain private and for profit institutions that have provided loans to debtors for educational purposes. *See, e.g., Maas*, 497 B.R. at 871 (loan provided by private institutional lender and assigned to another private institutional lender for general living expenses during law school is nondischargeable); *Beesley v. Royal Bank of Canada (In re Beesley)*, Case No. 12-24194-CMB, Adv No. 12-2444, 2013 WL 5134404, *5 (Bankr. W.D. Pa. Sept. 13, 2013) (line of credit provided by private lending institution for tuition, room, and board is nondischargeable under subsection (A)(ii)); *Chicago Patrolmen's Federal Credit Union v. Daymon (In re Daymon)*, 490 B.R. 331, 337 (Bankr. N.D. Ill. 2013) (debt owed to judgment creditor and former employer based on an employer-sponsored tuition reimbursement program is nondischargeable); *The Rabbi Harry H. Epstein School, Inc. v. Goldstein (In re Goldstein)*, Case

No. 11-81255-MGD, Adv. No. 12-5186, 2012 WL 8009707, *3 (Bankr. N.D. Ga. Nov. 26, 2012) (agreement with private school to pay tuition for children's attendance is nondischargeable); *Liberty Bay Credit Union v. Belforte (In re Belforte)*, Case No. 10-22742-JNF, Adv. No. 11-1008, 2012 WL 4620987, *9 (Bankr. D. Mass. Oct. 1, 2012) (an unsecured personal line of credit with credit union is nondischargeable).

But Brown is not a private, for profit institution in the business of providing loans for an educational benefit. He is a family friend and now judgment creditor that agreed to help Rust obtain an educational loan. Still, when focusing on the purpose of the loan giving rise to Brown's Claim, there is no reason he should not receive the protections in subsection (A)(ii).

The court in *Corbin* did not focus its discussion of the creditor's capacity in cosigning the loan in its analysis of § 523(a)(8)(A)(ii). The court did spend considerable time establishing the creditor's accommodation party status and framed the issue as "whether [the Plaintiff's act of] cosigning the Loan *as an accommodation party* constitutes an 'educational benefit.'" *Corbin*, 506 B.R. at 296 (emphasis supplied). The court ultimately concluded that "the provision of an accommodation, in order to secure for a student funds for the purpose of paying educational expenses, gives rise to an obligation on the part of the debtor to repay funds received as an educational benefit once the cosigner is required to honor its obligation to pay the debt." *Id.* at 297-298.

Brown provided a valuable service to enable Rust to obtain the Bank One Loan. Many lenders would not provide educational loans without the backing of an accommodation party. Acting as an accommodation party, therefore, supports the policy of encouraging lenders to provide educational loans. This is particularly appropriate considering Congress added

§ 523(a)(8)(A)(ii) to broaden the scope of § 523(a)(8) from its previously more narrow application.

Under the plain language of § 523(a)(8)(A)(ii), the debt herein is an "obligation to repay funds received as an educational benefit … ." Keeping in mind Congress's intent to expand the scope of § 523(a)(8) under subsection (A)(ii) beyond government and nonprofit institutions, as well as the policy underlying this discharge exception, the debt owed to Rust is the type of debt that is nondischargeable pursuant to § 523(a)(8)(A)(ii). As there are no genuine issues of material fact, Brown is entitled to summary judgment on this issue.

### III.  CONCLUSION

Rust owes the Brown a debt of $25,337.33, plus interest from date of the entry of judgment, based on the state court judgment and Brown's status as an accommodation party. The debt is nondischargeable pursuant to § 523(a)(8)(A)(ii) because the debt is an obligation to repay funds received as an educational benefit and Rust has not established that repayment of the debt is an undue hardship. Therefore, it is ORDERED that the Plaintiff's Motion for Summary Judgment [Doc. 11] is GRANTED and JUDGMENT on the allegations of the Complaint shall be entered for the Plaintiff pursuant to § 523(A)(8)(A)(ii).

The foregoing constitutes the Court's findings of fact and conclusions of law. In reaching the conclusions found herein, the Court has considered all of the evidence, exhibits, and arguments of counsel, regardless of whether or not they are specifically referred to in this decision. A separate Order shall be entered accordingly.

___

**The affixing of this Court's electronic seal below is proof this document has been signed by the Judge and electronically entered by the Clerk in the official record of this case.**



Signed By:
*Gregory R. Schaaf*
**Bankruptcy Judge**
Dated: Tuesday, May 06, 2014
(grs)